UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 12-1276(DSD/JSM)

Richard Lee Oprenchak, Jr.,

      Plaintiff,

v.                                        **ORDER**

American Family Mutual
Insurance Company and its
affiliates and subsidiaries,

      Defendant.

    Richard Lee Oprenchak, Jr., 10215 32nd Avenue North, Plymouth, MN 55441, pro se.

    David P. Jendrzejek, Esq. and Moss & Barnett, PA, 90 South Seventh Street, Suite 4800, Minneapolis, MN 55402, counsel for defendant.

    This matter is before the court upon the motion for summary judgment by defendant American Family Mutual Insurance Company (American Family). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

    This employment dispute arises out of the 2010 termination of pro se plaintiff Richard Lee Oprenchak, Jr. by American Family. In April 2002, Oprenchak began working for American Family as a property claim specialist. Franzen Aff. Ex. C. In 2006, Oprenchak was promoted to property claim desk manager in Eden Prairie,

Minnesota. Oprenchak Dep. 23:19-23. That position was eliminated in early 2009, and American Family informed Oprenchak that he had to relocate to Madison, Wisconsin in order to retain his job. Am. Compl. ¶ 2.1.3. Oprenchak ultimately did not relocate, but began reporting to the Madison office and supervisor Jim Andersen in May or June of 2009. Oprenchak Dep. 22:4-6, 24:3-6.

During a September 2009 performance review, Andersen concluded that Oprenchak had inadequately supervised adjusters working under him and gave Oprenchak a rating of "Inconsistent [Plus]." Franzen Aff. Exs. G, K. As a result, Andersen provided Oprenchak with a written reminder and assigned him "Decision-Making Leave," whereby Oprenchak was to spend two days "away from the office considering [his] future with American Family." Id. Ex. I. The written reminder cited Oprenchak's "lack of file supervision" over two files that resulted in "large losses" to American Family and expressed that both files "lacked proactive supervision on [Oprenchak's] part and unacceptable management of the loss." Id., at 1. Oprenchak continued to work for American Family and provided Andersen with an "Action Plan" detailing steps he intended to undertake "to correct the deficiencies in my file audits." Id., at 3.

In March 2010, Oprenchak handled a claim for a ring that an insured lost and later recovered. Oprenchak Dep. 105:14-106:5. American Family initially paid the insured $26,600. Id. at 105:22-

25. After finding the ring, the insured offered to reimburse American Family and keep the ring. See id. at 108:2-10. Oprenchak instead accepted $5,000 for the ring, believing that the ring's depreciated value justified a decreased amount. Id. at 108:21-22, 117:10-25, 120:9-16. Specifically, Oprenchak informed Andersen that if American Family recovered the full $26,600, it would be "a violation of the insurance code." Id. at 118:7-8. American Family eventually recovered the full amount from the insured. See Franzen Aff. Ex. L.

In May 2010, Andersen received a report on Oprenchak prepared by a regional specialist. Id. Ex. M. Andersen determined that Oprenchak had inadequately supervised his files, conferred with American Family's human resources staff and terminated Oprenchak on May 20, 2010. See id. Ex. N.

On May 30, 2012, Oprenchak filed an amended complaint, alleging fraud, breach of contract, negligence, wrongful termination, infliction of emotional distress, libel, slander and discrimination. American Family moves for summary judgment.

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

**II. Choice of Law**

"Federal courts sitting in diversity apply the choice-of-law rules of the forum state." Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009) (citation omitted). American Family argues that Wisconsin law should apply because it is a Wisconsin

4

corporation and at all relevant times, Oprenchak reported to the American Family branch in Madison, Wisconsin. Oprenchak, however, lives in Minnesota and was employed with American Family at its office in Eden Prairie, Minnesota. Franzen Aff. Ex. C. At no time did Oprenchak relocate to Wisconsin. Oprenchak Dep. 170:17-22.

Here, because there is no express choice-of-law provision in any employment document, Minnesota choice-of-law analysis first requires a court to determine "whether the different states' laws actually present a conflict." Whitney v. Guys, Inc., 700 F.3d 1118, 1123 (8th Cir. 2012) (citation omitted). "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co., 604 N.W.2d 91, 94 (Minn. 2000) (citation omitted). The court finds no conflict between Minnesota and Wisconsin law on any determinative issue. As such, a choice of law need not be made and the court applies Minnesota law.

**III. Fraud**

Oprenchak first argues that American Family committed fraud. Specifically, Oprenchak argues that American Family used "fraudulent studies" and relied upon invalid data in evaluating his employment performance, and that American Family failed to follow several of its own internal procedures. Am. Comp. ¶¶ 1.2-1.9. The court construes this as a claim for fraudulent misrepresentation.

To establish fraudulent misrepresentation, a plaintiff must demonstrate that:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C., 736 N.W.2d 313, 318 (Minn. 2007) (alteration in original) (citation omitted). Even if American Family's statements qualify as intentionally false misrepresentations, Oprenchak has adduced no evidence that he relied on the statements or that he suffered damages from such reliance. As a result, no reasonable jury could find fraudulent misrepresentation and summary judgment is warranted.

## IV. Breach of Contract

Oprenchak next argues a claim for breach of contract. "A claim of breach of contract requires proof of three elements: (1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A., 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) (citations omitted). Formation of a contract requires "a specific and definite offer, acceptance, and consideration." Id. (citations

6

and internal quotation marks omitted). The court analyzes contract formation based on the objective conduct of the parties. Id. Oprenchak argues that American Family breached (1) the Performance Improvement Plan (PIP) handout and (2) the relocation agreement.

**A. PIP Handout**

Oprenchak first argues that the PIP handout created a unilateral contract. Specifically, Oprenchak argues that the PIP handout modified his otherwise at-will employment by requiring American Family to follow particular procedures prior to termination. Under Minnesota law, "employment is generally considered to be at will." Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 741 (Minn. 2000) (citation and internal quotation marks omitted). Terms of employment documents, such as the PIP handout, "may constitute terms of an employment contract if (1) the terms are definite in form; (2) the terms are communicated to the employee; (3) the offer is accepted by the employee; and (4) consideration is given." Feges v. Perkins Rests., Inc., 483 N.W.2d 701, 707 (Minn. 1992) (citation omitted). The provisions of employment documents, however, do not automatically or necessarily modify the default rule of at-will employment. "Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions." Pine River State Bank v. Mettille, 333 N.W.2d 622, 626 (Minn. 1983) (citation omitted).

7

American Family argues that the PIP was insufficiently definite to reflect new and enforceable terms of the employment arrangement. "[H]andbook language must be definite enough for a court to discern with specificity what the provision requires of the employer so that if the employer's conduct in terminating the employee or making other decisions affecting the employment is challenged, it can be determined if there has been a breach." Alexandria Hous. & Redevelopment Auth. v. Rost, 756 N.W.2d 896, 904 (Minn. Ct. App. 2008) (citation and internal quotation marks omitted). Here, the PIP expressly states that it is

> a tool that can be used to bring [performance] issues to the attention of the employee ... Each situation has its own set of facts and circumstances. Therefore, [American Family] will evaluate each situation based upon its own merits. Consequently, the phases do not need to be followed sequentially ... In some cases, immediate termination without using any phase of the [PIP] will be appropriate.

Franzen Aff. Ex. F at 3. Given the flexibility of the PIP and its express reservation of the right to terminate, the court determines as a matter of law that the PIP did not create an enforceable employment contract.[1] As a result, the PIP cannot form the basis

---

[1] Oprenchak also argues that American Family "failed to deal with [him] with good faith and fair dealing." Am. Compl. ¶ 1.6. Even if the court were to construe this as a claim for a breach of the implied covenant of good faith and fair dealing, "the Minnesota Supreme Court has squarely held that there is no implied covenant of good faith and fair dealing in Minnesota employment contracts." Poff v. W. Nat. Mut. Ins. Co., 13 F.3d 1189, 1191 (8th Cir. 1994) (citations omitted). As a result, to the extent that Oprenchak
(continued...)

8

of a breach of contract claim.

    **B.   Relocation Agreement**

    Oprenchak also argues that American Family breached a relocation agreement that purportedly obligated American Family to pay for his relocation expenses. Oprenchak, however, has not produced the relocation agreement or specified the terms of any such agreement. This failure alone warrants summary judgment. Moreover, Oprenchak has adduced no evidence that he ever relocated or incurred relocation expenses. See Oprenchak Dep. 169:12-171:12. As a result, even if a valid relocation agreement existed, Oprenchak has not demonstrated that American Family breached such an agreement. See Thomas B. Olson, 756 N.W.2d at 918. For this additional reason, the breach of contract claims fail and summary judgment is warranted.

**V.  Negligence**

    Oprenchak next argues a claim for negligence. Specifically, Oprenchak argues that American Family failed to properly train and supervise its employees.[2] Am. Compl. ¶ 3.2. Under Minnesota law,

---

(...continued)
alleges a claim for breach of the implied covenant of good faith and fair dealing, summary judgment would also be warranted.

    [2] To the extent that Oprenchak argues that his termination supports a claim for negligent termination, that claim fails. See Eklund v. Vincent Brass & Aluminum Co., 351 N.W.2d 371, 379 (Minn. Ct. App. 1984) (noting that Minnesota does not recognize a claim for negligent termination), overruled on other grounds by Hunt v. IBM Mid Am. Emps. Fed. Credit Union, 384 N.W.2d 853 (Minn. 1986).

9

to prove negligent supervision, a plaintiff must show that an employer failed "to exercise ordinary care in supervising the employment relationship so as to prevent the foreseeable misconduct of an employee causing harm to others." Mandy v. Minn. Mining & Mfg., 940 F. Supp. 1463, 1471 (D. Minn. 1996) (citation and internal quotation marks omitted) (applying Minnesota law). To maintain an action for negligent supervision, however, "the existence of a threat, or reasonable apprehension of actual *physical injury* is required." St. Hilaire v. Minco Prods., Inc., 288 F. Supp. 2d 999, 1010 (D. Minn. 2003) (emphasis in original) (citation and internal quotation marks omitted) (applying Minnesota law). Here, Oprenchak argues that American Family improperly supervised and trained various employees, but does not argue that he suffered physical injuries. Rather, Oprenchak argues that negligence resulted in overpayment of third-party insurance claims and financial injury to the company. Because Oprenchak presents no evidence of physical injury or apprehension of physical injury, the negligent supervision claim fails and summary judgment is warranted.

**VI. Wrongful Termination**

Oprenchak next argues a claim for wrongful termination. Specifically, Oprenchak claims that American Family terminated him for refusing to violate sections 3901.20 and 3901.21 of the Ohio Unfair Claims Practices Act (UCPA) when processing the ring claim.

10

See Ohio Rev. Code Ann. §§ 3901.20-21. The court construes this as a claim under the Minnesota Whistleblower Act (MWA).[3]

Under the MWA,

> [a]n employer shall not discharge ... an employee ... because ... the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

Minn. Stat. § 181.932. The court analyzes MWA claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Chial v. Sprint/United Mgmt. Co., 569 F.3d 850, 854 (8th Cir. 2009) (applying the burden-shifting framework to MWA claims). At the first stage of the analysis, a plaintiff must establish a prima facie case by showing "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983) (citation omitted). An employer then has an opportunity to rebut the prima facie case by offering "some

---

[3] Minnesota also recognizes a common law cause of action "for wrongful discharge if that employee is discharged for refusing to participate in an activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law." Phipps v. Clark Oil & Ref. Corp., 408 N.W.2d 569, 571 (Minn. 1987). In this case, because any common law wrongful discharge claim is "largely duplicative of the cause of action available under the [MWA]," the court's analysis applies equally to both. Nelson v. Prod. Alts., Inc., 715 N.W.2d 452, 455 n.3 (Minn. 2006).

11

legitimate, nondiscriminatory reason for the discharge." Id. at 445. Upon such a showing, the burden shifts back to the plaintiff "to prove that the proffered reason is merely a pretext and that retaliatory animus motivated the adverse action." Buytendorp v. Extendicare Health Servs., Inc., 498 F.3d 826, 834 (8th Cir. 2007) (citation omitted).

Here, even if Oprenchak could establish a prima facie case, American Family has offered a non-retaliatory motive for the discharge — serious and ongoing concerns related to his overall job performance. An employer's burden of showing a legitimate, non-retaliatory reason for termination is not onerous. Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 954 (8th Cir. 2012). American Family has met this burden, and the burden shifts to Oprenchak to demonstrate a material issue of fact as to whether the proffered reason is pretextual.

To show pretext, a plaintiff "must point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence [does] not directly contradict or disprove [the] defendant's articulated reasons for its actions." Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 793 (8th Cir. 2011) (alterations in original) (citation and internal quotation marks omitted). Here, Oprenchak produces no evidence suggesting that American Family was motivated by retaliatory animus. Instead, Oprenchak relies on the timing

between the ring claim and his termination. Timing alone, however, "is usually insufficient to establish that the employer's legitimate non-discriminatory reason for discharge is pretext." Hilt v. St. Jude Med. S.C., Inc., 687 F.3d 375, 379 (8th Cir. 2012) (citations and internal quotation marks omitted). Because Oprenchak presents no additional evidence of pretext, the wrongful termination claim fails and summary judgment is warranted.

**VII. Intentional Infliction of Emotional Distress**

Oprenchak next alleges a claim for emotional distress. The court construes this as a claim for intentional infliction of emotional distress (IIED). To establish IIED under Minnesota law, "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Hubbard, 330 N.W.2d at 438-39. Oprenchak, however, has adduced no medical records or other evidence to demonstrate that he has suffered severe emotional distress. See, e.g., Elstrom v. Indep. Sch. Dist. No. 270, 533 N.W.2d 51, 57 (Minn. Ct. App. 1995) (finding insomnia, crying spells, depression and fear of answering door and telephone insufficient to establish severe distress). As a result, no reasonable jury could find IIED and summary judgment is warranted.[4]

---

[4] For this same reason, even if the court construes the "emotional distress" claim as one for negligent infliction of emotional distress (NIED), summary judgment is still warranted. See Brown v. Chiappetta, 806 F. Supp. 2d 1108, 1119-20 (D. Minn.
(continued...)

13

**VIII. Defamation**

Oprenchak next argues claims for slander and libel. To succeed on a defamation claim under Minnesota law, a plaintiff must establish that a false statement was communicated to someone other than the plaintiff and harmed the plaintiff's reputation or lowered him in the estimation of the community. Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980).

Specifically, Oprenchak argues that American Family (1) told a subcontractor, NAC,[5] after Oprenchak's termination, that American Family did not want Oprenchak working on American Family claims, (2) included false statements in its response to the Equal Employment Opportunity Commission (EEOC) regarding Oprenchak's complaint of age discrimination, (3) included false statements about Oprenchak's claim management in correspondence between external and internal counsel and (4) included false statements in its internal investigation of Oprenchak's performance, which became part of Oprenchak's personnel file.

As an initial matter, Oprenchak has not identified which specific statements he alleges are defamatory. Moreover, American Family argues that each of the statements are either absolutely or

---

[4](...continued)
2011) (stating that, under Minnesota law, an NIED plaintiff must prove "severe emotional distress").

[5] American Family contracted with NAC, which subcontracted with others to perform work, including work on American Family files. Oprenchak Dep. 179:24-182:22.

conditionally privileged. Indeed, "statements made to the EEOC in response to a charge are absolutely privileged" and cannot support a claim for defamation. Dawson v. Wells Fargo Corp., No. 11-2456, 2012 WL 3870597, at *3 (D. Minn. Sept. 6, 2012) (citations omitted). Further, attorneys' statements "in communications preliminary to a proposed judicial proceeding" — such as the communication between internal and external counsel — are also protected by absolute privilege. Matthis v. Kennedy, 67 N.W.2d 413, 419 (Minn. 1954) (citation omitted). As a result, those statements cannot support a claim for defamation.

As to the other allegedly-defamatory statements, "the originator of the statement will not be held liable if the statement is published under circumstances that make it conditionally privileged and if privilege is not abused." Lewis v. Equitable Life Assurance Soc'y of the U.S., 389 N.W.2d 876, 889 (Minn. 1986). A statement is conditionally privileged if "made upon a proper occasion, from a proper motive, and ... [is] based upon reasonable or probable cause." Stuempges, 297 N.W.2d at 256-57 (citation omitted). To establish a conditional privilege, a defendant must show the statement was made "in good faith by a speaker who had an interest or duty with respect to the subject matter to a person having a corresponding interest or duty." Ferrell v. Cross, 557 N.W.2d 560, 565 (Minn. 1997) (citation omitted). In the employment context, "[c]ommunications between an

15

employer's agents made in the course of investigating or punishing employee misconduct are made upon a proper occasion and for a proper purpose." Id. at 566 (Minn. 1997) (citation and internal quotation marks omitted). Here, the statements made among agents regarding the personnel investigation and American Family's statements to its subcontractor are both conditionally privileged.[6] In sum, all of the allegedly defamatory statements were absolutely or conditionally privileged, and summary judgment on the defamation claim is warranted.

## IX. Discrimination

Oprenchak next argues that American Family discriminated against him. Specifically, Oprenchak argues that American Family violated its policy to not discriminate against employees "for any [r]eason," and that American Family "held the other 8,000 employees to one standard and applied a second standard to only [Oprenchak]." Am. Compl. ¶¶ 9.2, 9.4. Such claims of general mistreatment are not actionable. A plaintiff must demonstrate membership in a protected class in order to maintain a claim for discrimination or disparate treatment. See Hubbard, 330 N.W.2d at 442 ("The crux of

---

[6] If a defendant establishes a conditional privilege, the plaintiff can prove the privilege was abused with a showing of actual malice. Stuempges, 297 N.W.2d at 257. To establish malice, a plaintiff must demonstrate the defendant "made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." Id. (citations and internal quotations omitted). Oprenchak has produced no evidence of malice from which a reasonable jury could find that the conditional privilege was abused.

a disparate treatment claim involving an employer's decision to discharge an employee is that the employer is treating that employee less favorably than others *on the basis of an impermissible classification.*" (emphasis added)). Oprenchak, however, does not argue that he was discriminated against based on membership in a protected class.[7] See Minn. Stat. § 363A.08, subdiv. 2 (listing race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, membership or activity in a local commission, disability, sexual orientation and age as protected classes). As a result, the discrimination claim fails, and summary judgment is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 18] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 4, 2013

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court

---

[7] Although Oprenchak filed a complaint of age discrimination with the EEOC, he does not allege that he was terminated because of age. Indeed, there is no evidence of age-based animus, as Oprenchak was 52 years old at the time of his termination and his replacement was 49 years old. Franzen Aff. Ex. P, at 11.